## Case No. 16,379.

### UNITED STATES v. STARR.

[Hempst. 469.] 1

Circuit Court, D. Arkansas. July, 1846.

OFFENCES COMMITTED IN INDIAN COUNTRY—JURISDICTION OF FEDERAL COURTS — CONSTRUCTION OF CRIMINAL LAWS.

1. Until the act of 17th of June, 1844 (4 Stat. 733), was passed by congress, the courts of the United States had no jurisdiction to hear, try, and punish offences committed in the Indian country west of Arkansas.

[Followed in U. S. v. Ivy, Case No. 15,451. Cited in Ex parte Kang-gi-shun-ca, 3 Sup. Ct. 396, 109 U. S. 560.]

2. That act was prospective, and did not operate on the past.

3. Laws are generally made to operate upon the future, not the past, transactions of men, and courts will not give them a retroactive effect unless that intention is clearly expressed.

[Cited in Brooke v. McCraken, Case No. 1,932; Tinker v. Van Dyke, Id. 14,058.]

4. Penal laws must be construed strictly.

5. If there is no tribunal competent at the time to punish an offence, the jurisdiction cannot afterwards be conferred.

[This was a writ of habeas corpus to procure the discharge of Ellis Starr from imprisonment.]

S. H. Hempstead, U. S. Dist. Atty.
E. H. English, for the prisoner.

JOHNSON, District Judge. By act of congress, passed the 30th of June, 1834, so much of the laws of the United States as

1 [Reported by Samuel H. Hempstead, Esq.]

provides for the punishment of crimes committed within any place within the sole and exclusive jurisdiction of the United States, are declared to be in force in the Indian country west of Arkansas; but not to extend to crimes committed by one Indian against the person or property of another Indian. And for the sole purpose of giving jurisdiction to the territorial court, that part of the Indian country was annexed to the territory of Arkansas. 4 Stat. 729; 4 Story's Laws U. S. 2399; 9 Story's Laws U. S. 128. On the 15th of June, 1836, the territory of Arkansas became one of the United States, by the name of the state of Arkansas, (5 Stat. 50), and on the 3d of March, 1837, this court was created, and invested with like jurisdiction as other circuit courts of the United States (5 Stat. 176.)

At a previous term, in the case of U. S. v. Alberty [Case No. 14,426], we held that this court possessed no jurisdiction beyond the limits of the state of Arkansas, and, consequently, had no power or authority to hear, try, and punish offences committed in the Indian country. Subsequent to that decision, and to remedy that defect, congress, on the 17th of June, 1844, passed the act entitled "An act supplementary to the act entitled 'An act to regulate trade and intercourse with the Indian tribes, and to preserve peace on the frontiers,'" passed 30th of June, 1834, and thereby provided "that the courts of the United States in and for the district of Arkansas be and they hereby are vested with the same power and jurisdiction to hear, try, determine, and punish all crimes committed within that Indian country designated in the twenty-fourth section of the act to which this is a supplement, and therein and thereby annexed to the territory of Arkansas as were vested in the courts of the United States for said territory before the same became a state. And for the sole purpose of carrying this act into effect, all that Indian country heretofore annexed by the twenty-fourth section of the act aforesaid to the territory of Arkansas, be and the same hereby is annexed to the state of Arkansas." 5 Stat. 680. It will be seen by this act that anterior to the 17th of June, 1844, this court had no jurisdiction of crimes committed in the Indian country, and on that day acquired such jurisdiction.

In the case now before the court, it is agreed and admitted by the parties to this proceeding, and is evident from the proof, that Ellis Starr is charged with the commission of the crime of murder in the Indian country annexed to the state of Arkansas by the act of 1844, on a day anterior to its annexation, that is to say, before the 17th of June, 1844, and the question made and argued by the counsel is, whether this court has jurisdiction of the crime. It seems to me plain that at the time the offence charged was committed, neither this court, nor any other court of the United States, had power

and jurisdiction to hear, try, and punish it. Indeed, it is manifest that from the time this court was created, on the 3d of March, 1837, up to the 17th of June, 1844, there existed no judicial tribunal of the United States competent to try and punish offences committed in this Indian country, and so this court decided in the case cited when its presiding judge (Hon. Peter V. Daniel) was present. And to give that jurisdiction was the sole object of the act of the 17th of June, 1844.

It is, however, insisted that this act confers upon this court jurisdiction to punish all offences against the laws of the United States committed in the Indian country,—those before as well as those after its enactment. The argument is that the crime was committed against an existing law, and within the jurisdictional limits of the United States, although this court could not then, yet may now punish it; and in carrying out this idea, it is said by the district attorney to get clear of a difficulty which lies in his path, that it is not a case where there was no law anterior to the 17th of June, 1844, creating the offence, and then doing it for the first time, for that, he concedes, would be an ex post facto law within the rule laid down in Calder v. Bull, 3 Dall. [3 U. S.] 386; but he insists that without creating any new offence, the law merely designates a tribunal to punish one already committed against an existing law of the United States forbidding it. If this be a sound position, then it is manifest that the act must have a retrospective operation; because, otherwise, it could not affect transactions which took place before its passage. The crime charged against the prisoner, as stated, was committed when neither this nor any other court of the United States was clothed with jurisdiction and power to try and punish it, and to proceed to do so now would be to give the act in question a retroactive effect.

Now in the construction of a statute it is a cardinal and well established principle, that the court will never give to it a retrospective operation, unless it clearly appears from the language used, that its makers intended it to have that effect; because laws are generally made to operate upon the future, not the past, transactions of men. 9 Bac. Abr. tit. "Statute," C. Legislatures seldom, if ever, especially in the enactment of criminal laws, intend them to have a retroactive effect, and certainly courts will never give them that operation, even if it can be done at all, unless the intention is clearly expressed. Prince v. U. S. [Case No. 11,425]. Penal laws must be construed strictly.

The inquiry then is, has congress, by the terms used in the act of the 17th of June, 1844, giving this court jurisdiction, clearly expressed the intention, that it shall take cognizance of past as well as future crimes? Let us examine the words of the statute itself. It provides that the court shall have the same power and jurisdiction of these of-

fences that were vested in the courts of the United States for the territory of Arkansas before the same became a state. And for the sole purpose of carrying the act into effect, all that Indian country heretofore annexed to the territory of Arkansas is thereby annexed to the state of Arkansas. By this act nothing beyond jurisdiction of crimes committed in the Indian country is conferred on this court, and in order to make the grant effectual, the Indian country is attached to this judicial district and constitutes a part of it. This is all. There is nothing from which an inference can be drawn that it was intended by its makers to have a retrospective operation. They have neither said so expressly nor have they intimated that it shall have that effect. In the absence of any express intention to the contrary, the court is bound to presume that the makers of the law intended it to operate upon the future and not upon the past. If congress had made it retrospective, a nice question would then have been presented, upon which I give no positive opinion, although my mind inclines to the belief, for reasons that need not now be stated, that if there is no tribunal competent at the time to punish an offence, the jurisdiction cannot be afterwards conferred. For these reasons the prisoner must be discharged.

Discharged accordingly.